Filed 11/26/14  P. v. Johnsen CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>WILLIAM LESTER JOHNSEN,<br><br>  Defendant and Appellant. | H040125<br>(Santa Cruz County<br> Super. Ct. No. F24075) |

After a court trial, the trial judge found defendant William Lester Johnsen guilty of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1), a felony; all further undesignated statutory references are to the Penal Code) and possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a), a felony), but not guilty of battery on a cohabitant (§ 243, subd. (e)(1), a misdemeanor).  The court also found true an enhancement allegation that defendant personally inflicted great bodily injury (§ 12022.7, subd. (a)) when he committed the assault.  The court sentenced defendant to six years in prison and imposed fines and fees.

We initially appointed counsel to represent defendant.  Defendant then hired retained counsel who substituted in to represent defendant on appeal.  Defendant's retained counsel filed an opening brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), which stated the case and the facts, but raised no specific issues on appeal.

After we granted retained counsel's motion to withdraw, we appointed counsel to represent defendant in this court. Appointed counsel has adopted the *Wende* brief filed by retained counsel. We notified defendant of his right to submit written argument in his own behalf within 30 days. That period has elapsed, and we have received no written argument from defendant.

We have reviewed the entire record pursuant to *Wende*, *supra*, 25 Cal.3d 436. Based upon that review, we conclude that there is no arguable issue on appeal. We will therefore affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

### I. Evidence Presented at Court Trial

### A. Shannon's Testimony[1] for the Prosecution

Shannon had known defendant for almost 30 years. He was one of her best friends. Although Shannon was not related to defendant, she called him "Cousin Billy." On January17, 2013, Shannon needed a place to stay; defendant let her sleep on his chaise lounge. Shannon was not feeling well and slept off and on throughout the day. (On cross examination, Shannon admitted that she had used methamphetamine the day before.) Amber (defendant's girlfriend), Crystal King, and an unidentified male were also at defendant's apartment that day.

When Shannon woke up that evening, she heard defendant arguing with Amber. Amber was leaving and taking her things. Defendant did not want Amber to leave and hid some of her things. They argued for some time. After defendant hit Amber with a

---

[1] We shall refer to the two alleged victims in this case (Shannon and Amber) by their first names only.

toy "light saber," Amber left. Defendant left a few minutes later. It was around 11:00 p.m. There had been "a lot of drama all day," so Shannon decided to visit another friend.

Shannon walked down the driveway and saw Amber and defendant on the ground, on the sidewalk across the street. Amber was on her side. Defendant was kneeling over Amber and had his hand on her mouth. When defendant turned to look at Shannon, Amber "got her mouth free" and yelled, "Watch out! He has a hammer!" Shannon saw the hammer in defendant's hand. Shannon ran across the street, knelt next to defendant, and started talking to him. Amber broke free and ran back across the street. Defendant ran after her. They yelled at each other as they went down the street. Amber screamed at passing cars, trying to get someone to stop and pick her up. Shannon saw a truck door open, then heard glass crashing. Defendant yelled at Amber and pulled her away from the truck.

Amber then ran onto the porch of a house and started pounding on the door, begging for someone to help her. Defendant followed Amber onto the porch. Shannon saw defendant standing behind Amber on the porch, with the hammer "raised up in the air." Shannon slammed her bag against the fence outside the house and shouted that "it wasn't going to go down like that." Shannon walked up the path, toward the porch. Defendant, who was 10 to 15 feet from her, turned and shouted, "This is all your fucking fault, bitch!" Suddenly, Shannon felt an impact on her head. She then saw a bloody hammer at her feet, and felt blood all over her face. Shannon had seen the hammer in defendant's hand, but did not see him throw it at her. She asked people who were gathering for help, but no one helped her. Shannon picked up the hammer and was "headed toward" defendant when the police arrived. The officers ordered her to "drop the weapon," and get down, which she did. Although Shannon originally denied drinking alcohol that night, on cross examination she admitted drinking "a shot" or two, but could not recall what type of alcohol she was drinking.

Paramedics treated Shannon at the scene and then took her to Dominican Hospital. Her injuries included a three and one half-inch scalp laceration, which required six or seven staples and four sutures. Shannon was "in a daze" for two weeks. As a result of her head injury, Shannon has lost consciousness twice, stutters daily, experiences "word dyslexia" (for example, saying "put" instead of "pot"), and is afraid to be alone.

## B. Testimony of Other Prosecution Witnesses

On January 17, 2013, Anne Seales heard a woman in the street repeatedly yelling, "Get the fuck away from me" and a man saying, "No." The woman also tried to get a car to stop for her. Seales called 911.

Santa Cruz Police Officer Joshua Trog responded to the 911 call. When he arrived on scene, Shannon was in the street, holding a hammer and looking angry. Amber was on the porch of a house. Officer Trog photographed Shannon's injuries and the hammer. He examined her head wound and saw exposed bone.

Police Officer Eileen Fincutter also responded to the 911 call. Officer Fincutter testified that after she gave *Miranda*[2] warnings to defendant, he told her Amber was his "roommate" and his "whore." He also said Amber and Shannon were prostitutes he had hired and claimed that they had raped him. Defendant told the officer that a "guy named Gary" came over and gave Shannon and Amber drugs. Defendant said Gary threw a brick through a window of defendant's apartment, and the brick hit Shannon in the face. Defendant said Amber had the hammer, but he took it from her and used it to break into his father's car so he could drive Amber and Shannon around. Officer Fincutter asked another officer, Officer Vasquez, to go to defendant's residence and look for a brick and broken windows. Officer Vasquez reported that there was a broken window at defendant's apartment, but defendant's father said the window had been broken for a

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

4

couple of months. When Officer Fincutter booked defendant into jail, she found a baggie of methamphetamine in his sweater pocket. She recognized the substance, which tested presumptively positive for methamphetamine.

### C. Testimony of Defense Witness Crystal King

Crystal King had known defendant for more than five years; he was her best friend and she saw him almost every day. King confirmed that defendant and Amber had been in a romantic, dating relationship for four years and had lived together.

King went to defendant's apartment around 8:00 or 9:00 p.m. on January 17, 2013. She brought a bottle of vodka to "celebrate" because she was "going away to rehab." Defendant, Amber, Shannon, and two other males were there. Everyone drank the vodka except for defendant, who does not drink alcohol. Everyone, including defendant, used methamphetamine. King testified that Shannon was "awake and lively," and she was argumentative that night. When defendant and Amber started playing with a toy "light saber," Shannon got protective, as if defendant was going to hurt Amber. Shannon also kept making sexual advances to defendant, which he turned down.

At one point, defendant asked everyone to leave because he wanted to be alone with Amber. Shannon, who was intoxicated and angry, "stormed off" before anyone else left. Amber left 15 to 20 minutes later; defendant left right after Amber. The rest of the group stayed in the apartment. King did not see what happened outside. King did not see a brick being thrown through a window.

## II. Verdict and Sentencing

The court found defendant guilty of assault with a deadly weapon and possession of methamphetamine, but not guilty of battery on a cohabitant. The court found the enhancement allegation on the assault count to be true. Regarding the domestic battery,

5

the court had a reasonable doubt whether there was a harmful touching (whether defendant had placed his hand over Amber's mouth).

At the time of these offenses, defendant was on probation for two prior convictions for possession of a controlled substance (Health & Saf. Code, § 11377). The conditions of his probation in both cases required that he not use or possess controlled substances. In light of the convictions in this case, the court found that defendant had violated his probation in the two prior cases.

The probation department reported that defendant has an extensive criminal history dating back to 1990, including: (1) nine prior misdemeanor convictions for Vehicle Code violations, drug offenses, disturbing the peace, and corporal injury on a cohabitant; and (2) eight prior felony convictions, including five for possession of a controlled substance, possession of a firearm by a felon, battery on a police officer, and carrying a concealed dirk or dagger.

The court sentenced defendant to three years in prison for the assault with a deadly weapon, plus three years for the great bodily injury enhancement, for a total of six years. The court also imposed 16 months concurrent for possession of methamphetamine. At sentencing, the court received information that defendant had suffered a traumatic brain injury in a motorcycle accident in 1992 and a copy of a doctor's report from 2007 describing how that injury affected defendant's behavior. Defendant (age 43) and his mother made impassioned pleas for leniency and probation; his parents offered to provide him a place to live and a caregiver to monitor his behavior. The court stated that the letter from defendant's mother was "heart-wrenching . . . but the law compels a prison sentence."

## DISCUSSION

Initially, we appointed counsel to represent defendant in this court. Shortly thereafter, we received a substitution of attorneys from retained counsel and vacated our

6

order appointing counsel. Retained counsel filed an opening brief pursuant to *Wende*, *supra*, 25 Cal.3d 436, which stated the case and the facts, but raised no specific issues on appeal. We notified defendant of his right to submit written argument in his own behalf within 30 days. That period elapsed, and we did not receive any written argument from defendant.

In August 2014, while processing the appeal, we asked for supplemental briefing on the following questions: "(1) Is it appropriate for *retained* counsel on appeal to file a brief pursuant to *People v. Wende*[, *supra*,] 25 Cal.3d 436 . . . ? Is a criminal defendant who is represented by *retained* counsel entitled to *Wende* review? Please discuss *People v. Placencia* (1992) 9 Cal.App.4th 422 [(*Placencia*)]. [¶] (2) If not, what is the appropriate disposition? Should the judgment be affirmed or should the appeal be dismissed?"

Both parties agreed that under *Placencia*, it was inappropriate for retained counsel to file a *Wende* brief and that the right to *Wende* review applies only when the defendant is represented by appointed counsel. In his supplemental brief, retained counsel advised this court that he had written to defendant and inquired whether defendant wished to abandon the appeal or permit retained counsel to withdraw so defendant could seek other counsel. We granted retained counsel's request for additional time for defendant "to determine whether to abandon his appeal, permit retained appellate counsel to withdraw, or attempt to retain other counsel."

In September 2014, retained counsel advised this court that defendant had not responded to his letter and that he (retained counsel) therefore had no alternative but to move to withdraw. We did not receive any opposition to retained counsel's motion to withdraw. After the time to file opposition elapsed, we granted the motion to withdraw and appointed the Sixth District Appellate Project to represent defendant on appeal. We ordered appointed counsel to either (1) file a new brief, or (2) advise this court by letter that he or she was adopting the *Wende* brief filed by retained counsel, within 30 days.

7

Appointed counsel has elected to adopt the *Wende* brief filed by retained counsel. Thus, we have reviewed the entire record pursuant to *Wende*, *supra*, 25 Cal.3d 436. Based upon that review, we conclude that there is no arguable issue on appeal.

**DISPOSITION**

The judgment is affirmed.

_____

Márquez, J.

WE CONCUR:

_____

Bamattre-Manoukian, Acting P.J.

_____

Grover, J.